UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| JOEY DOUGLAS SEIBER, | ) | |
| --- | --- | --- |
| Plaintiff, | ) | |
| v. | ) | No. 3:19-CV-424-DCLC-HBG |
| DR. CASEY DILLON, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Casey Dillon ("Defendant")[1] has moved for summary judgment in this pro se prisoner's civil rights action for violation of 42 U.S.C. § 1983 [Doc. 41]. Plaintiff has failed to file a timely response in opposition to the motion. E.D. Tenn. L.R. 7.1, 7.2. For the reasons that follow, Defendant's motion for summary judgment is **GRANTED**, and this action is **DISMISSED WITH PREJUDICE**.

**I. SUMMARY JUDGMENT STANDARD**

Summary judgment is proper only when the pleadings and evidence, viewed in a light most favorable to the nonmoving party, illustrate that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a),(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is deemed "material" if resolving that fact in favor of one party "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To establish an entitlement to summary judgment, the moving party must demonstrate that the nonmoving party cannot establish an essential element of his case for which he bears the ultimate burden of proof at trial. *Celotex*, 477 U.S. at 322; *Moore*

---

[1] Plaintiff names Defendant as "Dr. Casey Dillon" in his complaint, but Dillon is a Physician Assistant and not a medical doctor [Doc. 41-1 ¶ 2].

*v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993).

Once the motion is properly supported with competent evidence, the nonmovant must show that summary judgment is inappropriate by setting forth specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 323; *Anderson*, 477 U.S. at 249. If the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," then there is a genuine dispute as to a material fact. *Anderson*, 477 U.S. at 248. If no proof is presented, however, the Court does not presume that the nonmovant "could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n.*, 497 U.S. 871, 889 (1990)).

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff, an inmate housed at the Anderson County Detention Facility ("ACDF") when this action was filed, was shot approximately 10 days before his arrest on December 8, 2018 [Doc. 8, p. 2-3]. In January 2019, a doctor at the University of Tennessee Medical Center ordered Plaintiff to undergo physical therapy three times per week for four weeks [*Id.* at 3-4]. Benchmark Therapy, where Plaintiff was receiving physical therapy, recommended Plaintiff continue to receive physical therapy [*Id.* at 4]. However, the therapy was stopped "because of a much[-]needed surgery on March 1, 2019" that was performed at U.T. Medical Center [*Id.*]. On March 13, 2019, Plaintiff was cleared to return to physical therapy, and he was scheduled a surgical follow-up appointment in eight weeks [*Id.*].

Plaintiff maintains that his physical therapy was not reinstated, and that he was not transported to his follow-up appointment, despite the fact that no medical staff ever evaluated him to determine whether he needed physical therapy or a follow-up [*Id.*]. He claims that the facility's physician, Dr. Casey Dillon, stopped his follow-ups, discontinued his physical therapy, and denied him Tylenol, which he had been prescribed [*Id.* at 8, 11].

Plaintiff also asserts that he fell in September 2019, and that a mobile x-ray was ordered [*Id*. at 4]. Plaintiff was sent to Oakridge Orthopedics and was seen by a physician who ordered a follow-up in two weeks [*Id.*]. Plaintiff claims that he was not transported for the follow-up, however, which resulted in his needless pain and suffering [*Id.* at 4-5].

### III. SUMMARY JUDGMENT EVIDENCE

Defendant began providing medical care at ACDF in June 2019 [Doc. 41-1, ¶ 3]. In March 2019, a nurse practitioner was providing Plaintiff medical services and, based on instructions from Plaintiff's surgeon, discontinued Plaintiff's physical therapy and medications [Doc. 41-1, ¶ 6; Doc. 41-1, p. 6]. The nurse practitioner initially stopped Plaintiff's Tylenol due to hoarding concerns and elected not to restart it on a continuous basis due to concerns of potential liver damage [Doc. 41-1, ¶ 7; Doc. 41-1, p. 6]. Defendant was not involved in those decisions [Doc. 41-1, ¶ 8].

Defendant evaluated and treated Plaintiff for a fall in September 2019 [Doc. 41-1, ¶ 9]. Defendant ordered an x-ray of Plaintiff's right knee that was performed on September 12, 2019 [Doc. 41-1, ¶ 9; Doc. 41-1, p. 7]. "The radiologist interpreted the x-ray as showing an internally fixated fracture involving the distal femur." [Doc. 41-1, ¶ 9; Doc. 41-1, p. 7]. Defendant noted Plaintiff was able to walk with the injury [Doc. 41-1, ¶ 9; Doc. 41-1, p. 8]. Defendant ordered another x-ray in four weeks and treated Plaintiff with medication for pain and swelling in the meantime [Doc. 41-1, ¶ 9; Doc. 41-1, p. 8]. Defendant instructed Plaintiff to seek further treatment if his conditioned worsened, and he became unable to walk [Doc. 41-1, ¶ 9; Doc. 41-1, p. 8].

Plaintiff subsequently reported increasing knee pain and was provided with additional pain medication [Doc. 41-1, ¶ 10; Doc. 41-1, p. 8]. On September 27, 2019, Defendant ordered an orthopedic consultation for Plaintiff [Doc. 41-1, ¶ 10; Doc. 41-1, p. 8-9]. On September 30, 2019, Dr. Michal O'Brien of Ortho Tennessee evaluated Plaintiff [Doc. 41-1, ¶ 11; Doc. 41-1, p. 11-16]. Dr. O'Brien determined that Plaintiff was stable and could be treated symptomatically but

3

noted that he could consider removing a pin in Plaintiff's leg in the future if the pain continued [Doc. 41-1, ¶ 11; Doc. 41-1, p. 15]. Dr. O'Brien did not schedule a follow-up appointment but noted that he would see Plaintiff again in a couple of months if he continued to have problems [Doc. 41-1, ¶ 12; Doc. 41-1, p. 15-16]. An additional x-ray was performed on Plaintiff's leg on October 11, 2019, and it showed the chronic proximal tibia fracture was unchanged and showed no indication of an acute injury [Doc. 41-1, ¶ 13; Doc. 41-1, p. 17].

Thereafter, Plaintiff filed the instant lawsuit on or about October 28, 2019 [Doc. 1].

## IV. DISCUSSION

### A. Standard for Inmate Medical Care

The government has an "obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). However, that right is not unqualified under the Constitution. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Rather, the denial of medical treatment to an inmate is actionable under § 1983 only if it violates the Eighth Amendment's prohibition against cruel and unusual punishment, which proscribes acts or omissions that produce an "unnecessary and wanton infliction of pain." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).

An Eighth Amendment claim for the denial of medical treatment is composed of two parts: (1) an objective component, which requires a plaintiff to show a "sufficiently serious" medical need; and (2) a subjective component, which requires the plaintiff to show the defendants acted with "deliberate indifference" to that need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate indifference is established by showing a defendant acted (or failed to act) with a mental state amounting to criminal recklessness. *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (citing *Farmer*, 511 U.S. at 834, 839-40). This requires an inmate to produce "proof that each defendant subjectively perceived facts from which to infer a substantial risk to the prisoner, that

4

he did in fact draw the inference, and that he then disregarded that risk by failing to take reasonable measures to abate it." *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (citations and internal quotation marks omitted).

Moreover, where medical treatment has been provided, a prisoner's disagreement with the adequacy of care given does not implicate the Constitution. *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1996). In fact, "when an inmate has received on-going treatment for his condition and claims that this treatment was inadequate, the objective component of an Eighth Amendment claim requires a showing of care so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rhinehart*, 894 F.3d at 737 (citation and internal quotation marks omitted). This is because "federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake*, 537 F.2d at 860 n.5. Rather, to state a constitutional claim, a prisoner must show that his treatment was "so woefully inadequate as to amount to no treatment at all." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2001) (citation omitted).

**B.  Application**

As a preliminary matter, the Court notes that since Defendant was not providing medical services at ACDF prior to June 2019, [Doc. 41-1 ¶ 3], Plaintiff cannot establish Defendant denied him medical care in relation to the discontinuance of physical therapy or his medications prior to that time frame.

With respect to Plaintiff's fall in September 2019, the competent summary judgment evidence demonstrates that Defendant initially ordered an x-ray for Plaintiff's knee and provided medication for pain and swelling [Doc. 41-1, p. 7-10]. When Plaintiff complained of increasing pain, Defendant referred Plaintiff for an orthopedic consultation [*Id*. at 9]. The orthopedist also determined that Plaintiff was stable and could be treated symptomatically [*Id*. at 15]. Plaintiff

5

complains that he was not taken to a scheduled follow-up with the orthopedist. But the physician's medical record shows that Plaintiff did not have a scheduled follow-up appointment [*Id.*]. Rather, it was recommended that Plaintiff receive a follow-up in a couple of months if one was needed [*Id.*]. Additionally, after the orthopedic evaluation, an x-ray was performed showing the chronic fracture to be stable [*Id.* at 17].

Since Plaintiff was provided on-going treatment for his injury, he must present medical proof that the treatment provided was grossly incompetent or inadequate to carry his burden of proof. *See Rhinehart*, 894 F.3d at 737-38. Plaintiff has presented no such proof. Thus, Plaintiff cannot establish the objective component of his Eighth Amendment claim against Defendant.

As to the subjective component of the Eighth Amendment standard, Plaintiff has presented no evidence that Defendant acted with a mental state akin to criminal recklessness. *Santiago*, 734 F.3d at 591. In fact, the undisputed evidence is to the contrary. Defendant treated Plaintiff's initial complaints and sent Plaintiff for evaluation by a specialist when he complained of increasing pain. There is no evidence in the record that Defendant ignored Plaintiff's complaints or refused to treat him at any point. Accordingly, there is no evidence to support the subjective component of Plaintiff's Eighth Amendment claim.

Therefore, the Court finds that the undisputed facts establish that Defendant did not deny Plaintiff medical care in violation of the Eighth Amendment, and Defendant is entitled to summary judgment.

V. **CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment [Doc. 41] is **GRANTED**, and Plaintiff's complaint is **DISMISSED WITH PREJUDICE**. The Court hereby **CERTIFIES** that any appeal from this order would not be taken in good faith. Therefore, should

Plaintiff file a notice of appeal, this Court will **DENY** Plaintiff leave to appeal *in forma pauperis*. *See* 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24.

    **AN APPROPRIATE JUDGMENT WILL ENTER.**

    **SO ORDERED:**

s/Clifton L. Corker  
United States District Judge
